**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **RAIMEE MARMILLION** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil Action No. 1:07CV1132-LG-RHW** |
| | § | |
| | § | |
| **AMERICAN INTERNATIONAL** | § | |
| **INSURANCE COMPANY; WILLIS** | § | |
| **NORTH AMERICA, INC.; and** | § | |
| **AIG MARKETING, INC.** | § | **DEFENDANTS** |

## ORDER DENYING WILLIS' MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** is the Motion for Summary Judgment [121] filed by the

defendant, Willis North America, Inc.  Upon reviewing the submissions of the parties and the

applicable law, the Court finds that Willis' Motion should be denied.

### INTRODUCTION

A more complete discussion of the facts at issue in this lawsuit is included in this Court's

opinion concerning the Motion for Summary Judgment filed by American International Insurance

Company and AIG Marketing, Inc. (hereinafter collectively referred to as "AIG"), which is

incorporated herein by reference.

### FACTS

Willis procured four insurance policies on behalf of the plaintiff, Raimee Marmillion,

from AIG: an automobile policy, a homeowners policy covering her house in Bay St. Louis,

Mississippi, a homeowners policy covering her house in Metairie, Louisiana, and an excess

policy.  On December 22, 2003, Rebecca Freedman, an employee of Willis, asked AIG to change

the "billing address"[1] for the Mississippi homeowners policy to P.O. Box 8470, Metairie,

Louisiana 70010, which was Marmillion's ex-husband's business address.  (Ex. C to AIG's Mot.

at 3).  On March 29, 2004, Freedman requested that the "mailing address" for Marmillion's

billing account be changed to 406 N. Beach Boulevard, Bay St. Louis, Mississippi 39520, which

was the address of Marmillion's house in Mississippi.  (*Id.* at 9).

On November 24, 2004, another Willis employee, Cathy Guilfo, asked AIG to change the

"insured address" for all policies to 6305 South Cliff, Fort Smith, Arkansas 72903, which was

the business address of Marmillion's fiancé.  (Ex. E to AIG's Mot.)  At her deposition, Guilfo

testified that she intended to change the address on both Marmillion's policies and billing

statements.  (Ex. F to AIG's Mot. at 49).  Only the policy mailing address was changed by AIG.

(Ex. G to AIG's Mot. at 54-57).  At her deposition, Freedman testified that Guilfo probably sent

the change of address request to the wrong AIG department.  (Ex. D to Pl.'s Resp. at 73-74).

However, a representative of AIG testified that the request was sent to the correct address.  (Ex.

DD to Willis' Mot. at 66-67, 91-92).  All of the billing statements for the 2004 through 2005

policy period were sent to Marmillion's ex-husband's business address.

Willis forwarded the first two billing statements for the 2004 through 2005 policy period

to Marmillion, and she paid them.  She never received the third and fourth billing statements

from either AIG or Willis.  Marmillion admits that she received a Notice of Cancellation

regarding the Mississippi homeowners policy at her Arkansas address prior to the effective date

of the cancellation, April 6, 2005.  (Ex. B to AIG's Mot. at 94).  Marmillion claims that she

---

[1] AIG views its policies as having two types of addresses: the "billing address," which is where bills are sent, and the "policy mailing address," which is where notices of cancellation and policies are sent.  (Ex. T to Pl.'s Resp. at 24-25).

asked Cathy Guilfo to send her a copy of the third billing statement approximately four or five times after she received the Notice of Cancellation, but Guilfo never sent the bill.  (Ex. A to AIG's Mot. at 97-98).  The policy was canceled on April 6, 2005.

In responses to requests for admissions, Marmillion admitted that Guilfo told her that the Mississippi and Metairie policies had been canceled during a phone conversation in June of 2005.  (Ex. O to AIG's Mot.).  However, during her deposition, Marmillion testified that Guilfo did not tell her about the cancellations at that time.  (Ex. B to AIG's Mot. at 102-03).  Willis sent a letter dated August 18, 2005, to Marmillion that informed her that her policies had been canceled and that Willis would not attempt to replace her policies without her express written request.  (Ex. L to AIG's Mot.)

Hurricane Katrina damaged Marmillion's Mississippi house on August 29, 2005. She sent a large check to AIG after the storm in an attempt to reinstate the policy and filed a claim under the policy.  The funds paid by Marmillion were returned to her, and her claim was denied.

She filed this lawsuit against AIG and Willis, asserting that the policy should never have been canceled because she was not provided with billing statements and because she had sufficient credits on her billing account to fund the Mississippi homeowners' policy at the time of cancellation.  Both Willis and AIG have filed Motions for Summary Judgment.

### DISCUSSION

Willis argues that it is entitled to judgment as a matter of law because "[a]ny alleged deficiency on the part of Willis in requesting that AIG amend Marmillion's policy mailing and billing addresses is superseded by AIG's wrongful cancellation of Marmillion's policy." (Willis' Mot. at 10-11).  Alternatively, Willis asserts that Marmillion acquiesced in the cancellation of the

policy by failing to pay the premium after receiving notice that the policy was going to be canceled.

The Court finds that a genuine issue of material fact exists regarding whether the problems concerning Marmillion's address were the fault of AIG or Willis, or both. Specifically, it is unclear whether the problem arose from miscommunication between Willis and AIG, AIG's negligence in handling the address change request, and/or Willis' failure to follow up with AIG and Marmillion in order to ensure that she was receiving her billing statements. Additionally, Marmillion claims that she requested a copy of the third billing statement from Willis four or five times after receiving the Notice of Cancellation but never received it.

However, Willis argues that, despite any negligence it allegedly committed, AIG's decision to deny Marmillion's claim was a superseding cause of Marmillion's damages. Therefore, this Court must consider whether any alleged negligence by Willis was the proximate cause of Marmillion's injury.

"In order for an act of negligence to proximately cause the damage, the fact finder must find that the negligence was both the cause in fact and legal cause of the damage." *Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1277 (¶31) (Miss. 2007). The cause in fact is "that cause which, in natural and continuous sequence unbroken by any efficient intervening cause, produces the injury and without which the injury would not have occurred." *Glover*, 968 So. 2d at 1277 (¶32) (quoting *Gulledge v. Shaw*, 880 So. 2d 288, 293 (Miss. 2004)). "A defendant's negligence . . . will also be the legal cause of that damage, provided the damage is the type, or within the classification, of damage the negligent actor should reasonably expect (or foresee) to result from the negligent act." *Id.* at 1277 (¶33) (citing Dobbs, The Law of Torts, § 180 at 443). " [I]n

satisfying the requirement of foreseeability, a plaintiff is not required to prove that the exact injury sustained by the plaintiff was foreseeable; rather, it is enough to show that the plaintiff's injuries and damages fall within the particular kind or class of injury or harm which reasonably could be expected to flow from the defendant's negligence." *Id.* at 1278 (¶37).  If the alleged intervening or superseding cause of an injury is foreseeable, it cannot supersede the liability of the defendant.  *Id.* at 1279-80 (¶43).

In the present case, the nonpayment of premium, cancellation of the policy, and denial of the insurance claim were clearly foreseeable results of Willis' alleged negligence in ensuring that Marmillion's bills were sent to the correct address.  As a result, any alleged wrongful conduct by AIG in cancelling the policy and denying Marmillion's claim was not a superseding cause of Marmillion's injury.

Alternatively, Willis argues that Marmillion acquiesced in the cancellation of her policy because she received a Notice of Cancellation and failed to make payment until after Hurricane Katrina.  In support of this argument, Willis relies on *Chatham v. Occidental Life Insurance Co. of California*, 158 So. 2d 735 (Miss. 1963).  In *Chatham*, the Court held:

> Although it may be said as a general rule that the wrongful termination of an insurance contract by the insurer excuses further tender of premiums or assessments by the insured, this does not mean that the insured, under all conditions, regardless of the circumstances of the determination, may remain entirely inactive for an indefinite period, accepting the returned premiums, and accepting a new policy in lieu thereof, and later permit the beneficiary to sue on the canceled policy.

*Chatham*, 158 So. 2d at 340 (citing Anno. 122 A.L.R. 386).  As this Court has previously held in its opinion on AIG's Motion for Summary Judgment, a genuine issue of material fact exists regarding whether Marmillion acquiesced in the cancellation of the policy because a fact question

exists regarding whether she received a billing statement.  Additionally, a genuine issue of material fact exists regarding whether the failure to correct the address and ensure proper delivery of billing statements to Marmillion was the fault of AIG, Willis, or both.  As a result, Willis' Motion for Summary Judgment must be denied.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Summary Judgment [121] filed by the defendant, Willis North America, Inc. is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 1st day of October, 2008.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE